IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701<br><br>      Plaintiff,<br><br>  v.<br><br>DAVID BERNHARDT, *in his official capacity as Secretary of the United States Department of the Interior*,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>AURELIA SKIPWITH, *in her official capacity as Director of the United States Fish and Wildlife Service*,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>*and*<br><br>UNITED STATES FISH AND WILDLIFE SERVICE<br>1849 C Street NW<br>Washington, DC 20240<br><br>      Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No.: |

## INTRODUCTION

1.  In this action, the Center for Biological Diversity ("Center") challenges the U.S. Fish and Wildlife Service's ("Service" or "FWS") failure to timely develop and prepare a status review for the unarmored threespine stickleback (*Gasterosteus aculeatus williamsoni*) ("stickleback"), in violation of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(c)(2)(A).

2. The Service listed the stickleback as "endangered" under the ESA's precursor act nearly fifty years ago. The stickleback was historically present in the Los Angeles, Santa Ana, and San Gabriel Rivers, but by 1985 was limited mostly to a small portion of the upper Santa Clara River drainage in northwestern Los Angeles County, a small area in the San Antonio Creek drainage in Santa Barbara County, and in the Shay Creek vicinity in San Bernardino County.

3. Stickleback populations are increasingly threatened by habitat destruction, water pollution, groundwater withdrawals, wildfire and non-native predators. Once ranging throughout the Los Angeles basin and beyond, there are now only five known remaining populations of the stickleback. A 2015 study found the fish at "high risk of extinction" and surveys did not identify stickleback in areas where they were abundant in previous years.

4. Under the ESA, the Service is required to conduct and publish a status review of every listed species, including the stickleback, at least once in every five years. The status review is supposed to inform the Service whether a change in listing status may be justified, but can also inform the Service and the public if the plight of the species has worsened since the previous status review.

5. The Service's failure to timely develop and prepare a legally required status review for the stickleback violates section 4(c) of the ESA, 16 U.S.C. § 1533(c); and constitutes agency action unlawfully withheld and unreasonably delayed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Accordingly, the Center brings this action against the Service to: (1) secure declaratory relief that the Service is in violation of the ESA for failing to timely develop and prepare a status review for the stickleback (2) enjoin the agency to issue a status review by a date certain.

## JURISDICTION AND VENUE

6. This action arises under the ESA, 16 U.S.C. § 1531 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. §§ 2201-2202 (declaratory judgments and further relief), 16 U.S.C. § 1540(c), (g)(1)(c) (action arising under the ESA and citizen suit provision). The Center has properly given notice to the Service of its claims under the ESA in accordance with 16 U.S.C. § 1540(g)(2)(c).

7. Venue in this Court is proper under 28 U.S.C. § 1391(e) because federal defendants reside in this judicial district. The Center for Biological Diversity also maintains an office in this judicial district.

## PARTIES

8. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY (the "Center") is a non-profit organization that is dedicated to the protection of native species and their habitats through science, policy, and environmental law. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices in Arizona, California, Colorado, the District of Columbia, Florida, Hawai'i, Idaho, Minnesota, Nevada, New Mexico, New York, North Carolina, Oregon, Washington, and Mexico. The Center has more than 70,000 active members, including members within the stickleback's current and historic range.

9. The Center brings this action on its own institutional behalf and on behalf of its members, who derive scientific, aesthetic, recreational, and spiritual benefits from endangered and threatened species and their habitats. The Center's members include individuals who regularly visit natural areas that are occupied by the stickleback, and seek to observe or study the stickleback in its natural habitat. The Center's members and staff derive educational, scientific, recreational, spiritual, professional, and aesthetic benefits from these activities, and intend to

continue to use and enjoy these areas in the future. Defendants' failure to timely develop a status review for the stickleback has injured and continues to harm the Center and its members' interests in this species' conservation. This harm would be remedied by a court order directing the Service to issue a status review for this species by a date certain. A timely and legally sufficient status review would help ensure that the best available scientific information is being used in assessing current recovery efforts and implementing new recovery efforts for the stickleback.

10. Defendant DAVID BERNHARDT is the Secretary of the Department of the Interior. The Secretary of the Interior is responsible for making decisions and promulgating regulations under the ESA. He is sued in his official capacity.

11. Defendant AURELIA SKIPWITH is the Director of the U.S. Fish and Wildlife Service. The Secretary of the Interior has delegated to the Service, among other things, the responsibility to develop and implement recovery plans for non-marine species. She is sued in her official capacity.

12. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the federal agency within the Department of Interior charged with responsibility for conserving endangered and threatened species under the ESA and for enforcing and implementing the ESA.

## STATUTORY BACKGROUND

13. The Endangered Species Act, 16 U.S.C. §§ 1531-1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Congress enacted the ESA, in part, to provide a "means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . [and] a program for the conservation of such endangered species and

threatened species . . . ." 16 U.S.C. § 1531(b). Indeed, Congress was explicit when it declared that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this Act." *Id.* § 1531(c)(1). The ESA defines "conservation" as the "use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary," *id.* § 1532(3), i.e. to bring about the recovery of species listed as endangered or threatened. *See id.* § 1532(6), (20) (definitions of "endangered species" and "threatened species").

14. The ESA requires the Secretary to protect imperiled species by listing them as either "endangered" or "threatened." 16 U.S.C. § 1533(a)(1). The ESA defines an "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range." *Id*. § 1532(6). A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20). The term "species" includes "any subspecies . . . and any distinct population segment . . . fish or wildlife." *Id*. § 1532(16).

15. To carry out the ESA's paramount purpose that listed species be "conserved," section 4(f) of the Act sets forth a detailed process for the development and implementation of recovery plans. Section 4(f)(1) provides that the Service "shall develop and implement [recovery] plans for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless [it] finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1). The Service, "in developing and implementing recovery plans, shall, to the maximum extent practicable" incorporate "such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the

species," as well as "objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal." *Id.* § 1533(f)(1)(B)(i)-(iii). A recovery plan must, therefore, provide for the recovery of the species.

16. Reinforcing the importance of recovery plans, Congress provided for public participation in the development and amendment of the plans. For example, prior to final approval of any "new or revised recovery plan," the Service must "provide public notice and an opportunity for public review and comment on such plan," 16 U.S.C. § 1533(f)(4), and the Service "shall consider all information presented during the public comment period prior to approval of the plan." *Id.* § 1533(f)(5). The Service must also "report every two years to the Committee on Environment and Public Works of the Senate and the Committee on Merchant Marine and Fisheries of the House of Representatives on the status of efforts to develop and implement recovery plans for all species listed pursuant to this section and the status of all species for which such plans have been developed." *Id.* § 1533(f)(3).

17. The Service's internal recovery planning guidelines provide that final recovery plans "shall be completed within 2.5 years of listing." Nat'l Marine Fisheries Serv. & U.S. Fish & Wildlife Serv., Interim Endangered and Threatened Species Recovery Planning Guidance, Version 1.4 at 1.5-2 (July 2018) [hereinafter "Recovery Planning Guidance"].

18. The ESA also requires the Service to regularly assess the status of listed species. Specifically, section 4(c) requires that the Service "conduct, at least once every five years, a review of all [listed] species . . . ." 16 U.S.C. § 1533(c)(2)(A). Based on that review, the agency

can determine whether the species should maintain its protections or be uplisted or delisted. *Id.*§ 1533(c)(2)(B); *see also* 50 C.F.R. § 424.21.

19. Section 7(a)(1) of the ESA provides an "affirmative duty" for federal agencies to conserve listed species. It provides that all federal agencies shall "utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species . . . ." 16 U.S.C. § 1536(a)(1). This substantive mandate ensures that listed species benefit from the implementation of actions needed for their survival and recovery, such as those prescribed in recovery plans.

20. The ESA's citizen suit provision provides for judicial review where the Service has failed to perform a mandatory duty under ESA section 4. 16 U.S.C. § 1540(g)(1)(C). The APA provides the standard of review, 5 U.S.C. § 706(2)(A), and provides for judicial review of the Service's violations of ESA sections 7(a)(1) – the affirmative duty to conserve. *Id.* § 702; *see also* 16 U.S.C. § 1536(a)(1). Additionally, under the APA, a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## THE STICKLEBACK AND ITS OUTDATED STATUS REVIEW

21. The stickleback is a tiny, scaleless, freshwater fish that inhabits slow-moving reaches in streams and rivers in southern California. Male sticklebacks build nests with mucus threads spun from their kidneys, and then court all gravid females that enter the area. After spawning, often with multiple females, the male defends the nest and fry.

22. Although stickleback were documented to live in numerous rivers and tributaries including the Los Angeles, San Gabriel, and Santa Ana rivers, stickleback are now only found in the upper Santa Clara River and its tributaries, San Antonio Creek on Vandenberg Air Force Base, and the Shay Creek vicinity in San Bernardino County.

23. Because of its precipitous declines, in 1969 the Service listed the stickleback under the Endangered Species Conservation Act of 1969, the precursor to the Endangered Species Act of 1973.

24. The stickleback has continued to decline across its range since listing, and habitat loss continue to occur throughout the stickleback's range. In 2016, relocation of stickleback from Soledad Canyon was undertaken to save that population from post-fire impacts from the Sand Canyon fire which could cause poor water quality and major sedimentation in stickleback-occupied areas. The stickleback were relocated to undisclosed locations in the Angeles National Forest that provided suitable habitat for the fish. Now, due to the most recent Bobcat fire, at least some of the relocated UTS populations will need to be moved again.

25. The Service issued a document entitled "Revised Unarmored Threespine Stickleback Recovery Plan" for the stickleback in 1985. The document states that it was revised from the original recovery plan prepared for the stickleback in 1977.

26. On May 29, 2009, the Service published a five-year review for the stickleback. In the five-year review, the Service states that "Since the development of the recovery plan, much research has been conducted and additional threats have been identified. Furthermore, since the development of the recovery plan, a new population (Bouquet Creek) of the UTS has been discovered and two populations (Canada Honda and San Francisquito Creek) have been extirpated."

27. The 2009 five-year review further states: "Although some efforts have been and are being made to acquire habitat for the species, little has been done so far, and none of the recovery criteria in the recovery plan for the UTS (Service 1985) have been fully met."

28.     A 2015 study found the fish at "high risk of extinction" and surveys did not identify stickleback in areas where they were abundant in previous years.

29.     The Service published a notice of initiation of a status review for the stickleback on February 10, 2020, and has stated a five-year review is "on track to be completed by September 30, 2021."

## CLAIM FOR RELIEF

### Violation of Endangered Species Act Section 4(c), 16 U.S.C. § 1533(c)

30.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

31.     Section 4(c) of the ESA requires that the Service prepare a status review for each listed species "at least once every five years." 16 U.S.C. § 1533(c)(2)(A); *see also* 50 C.F.R. § 424.21.

32.     The Service last prepared a status review for the stickleback in 2009.

33.     Because more than five years have passed since the Service prepared a five-year status review for the stickleback, the Service has violated its nondiscretionary duty to do so under ESA section 4(c), 16 U.S.C. § 1533(c)(2)(A).

## PRAYER FOR RELIEF

The Center respectfully requests that the Court grant the following relief:

1.      Declare that the Service is in violation of section 4(c) of the ESA, 16 U.S.C. § 1533(c);

2.      Order the Service to prepare and implement a scientifically based, legally valid status review for the stickleback by September 30, 2021;

3.  Award the Center its reasonable fees, costs and expenses associated with this litigation pursuant to16 U.S.C. § 1540(g)(4); and

4.  Grant such other and further relief as the Court deems just and proper to remedy the Service's violations of law.


DATED: January 18, 2021    Respectfully submitted,

    /s/ William J. Snape III
William J. Snape III (D.C. Bar No. 455266)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street N.W., Suite 1300
Washington, D.C. 20005
Telephone: 202-536-9351
bsnape@biologicaldiversity.org
wsnape@wcl.american.edu

John P. Rose (CA Bar No. 285819)*
CENTER FOR BIOLOGICAL DIVERSITY
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
Telephone: (213) 785-5400
Fax: (213) 785-5748
jrose@biologicaldiversity.org

John Buse (CA Bar No. 163156)*
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Telephone: (510) 844-7100
Fax: (510) 844-7150
jbuse@biologicaldiversity.org

*Attorneys for Plaintiff*

*Seeking admission *pro hac vice*